UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

WILLIAM MARK MORRIS,

        Plaintiff,

        v.         Case No. 06-C-941

COMMISSIONER OF SOCIAL SECURITY,
SECRETARY OF HEALTH & HUMAN SERVICES,

        Defendant.

DECISION AND ORDER DENYING PLAINTIFF'S APPEAL AND DISMISSING CASE

William Mark Morris seeks judicial review of a final decision denying his application for disability insurance benefits and supplemental security income. Administrative Law Judge Margaret O'Grady (ALJ) determined that Morris is not disabled under the Social Security Act because his impairments did not meet or equal the requirements for any impairment or combination of impairments in the Listing of Impairments and because he retains the functional capacity to perform past work.

Morris filed a one-page statement describing his impairments, and expressing concern that the ALJ disregarded the opinions of several doctors and did not accept his testimony. However, because the ALJ's decision is consistent with the law and supported by substantial evidence, the denial of benefits will be affirmed.

FACTS

Morris was born on January 17, 1957, and obtained his high school equivalency degree. (R. 15, 85) He was employed as a laborer, warehouse worker, and assembler. (R. 80)

On January 23, 1999, Morris slipped and fell on ice while coming out of a grocery store in Kenosha. (R. 200) Dr. Huron Ericson, an orthopedist who treated Morris for an a 1965 ankle fracture, examined Morris in 1999 and observed no spinal tenderness, negative straight leg test, normal gait, and no sensory loss in the lower extremities. *Id.* The doctor also observed that Morris could bend at the waist 45 degrees before encountering pain. (*Id.*) A CT scan in April of 1999 revealed moderate spinal stenosis at L4-L5. (R. 197) Dr. Ericson wrote: "I think that doing repetitive heavy lifting and bending work at the age of 42 with spinal stenosis is probably not a thing that is going to be very successful for him." (*Id.*)

An x-ray taken the following month revealed degenerative changes and increased sclerosis in the pars interarticularis at L5. (R. 209) The disc spaces seemed fairly well maintained, and there was no evidence of a compression fracture. (*Id.*) Hip x-rays were relatively normal. (*Id.*) Dr. Ericson further noted well-maintained joint spaces. (*Id.*) Six days prior to reading the x-rays, it was Dr. Ericson recommendation that Morris use a brace; however, the doctor's records indicate that Morris was waiting for "Social Service to help him out on the purchase. . . ." According to Dr. Ericson, Morris should pursue the Department of Vocational Rehabilitation (DVR) because there was a greater likelihood of being accepted by DVR than Social Security. (R. 196)

On May 23, 2003, Morris went to the Family Practice Center in Racine, Wisconsin, asking that two lesions around his right eye be removed. (R. 223) Dr. Barth found no sensory or motor deficits. (R. 223)

On July 18, 2003, Morris was examined by Dr. James P. Gierahn, an internist. (R. 193-194) Dr. Gierahn noted that a May 4, 1999, x-ray showed "some DJD of the LS-spine area," and a June 19, 2003, x-ray was interpreted as "a normal LS-spine" while mentioning

2

some atherosclerotic calcification of the abdominal aortic aneurysm. (*Id.*) One of the reasons that Morris went to the appointment was that he needed a form filled out for Freemason. (*Id.*)

Also, in July of 1993, Morris was examined by Dr. Ericson seeking to pursue his disability claim. (R. 195) Dr. Ericson observed the following:

> On examination he stands with a 5 degree list to the left side. There is 1+ flattening of the lumbosacral lordosis. There is no spasm of the paraspinal musculature. Flexion is 80 degrees, extension is 20 degrees, right bending is 20, left bending is 15. Maximal tenderness to the lumbosacral junction. He does have some skin lesions on the knees which are reminiscent of psoriasis. Trochanteric and iliopectineal bursae are negative. Straight leg raising is 80 on the right and 60 degrees with a positive Lasegue on the left. Faber test is negative bilaterally. Knee jerks are equal and 2+. Ankle jerks are equal and 2+. Dorsiflexion of the great toe is strong. Dorsiflexion and plantar flexion of the foot is strong. Quadriceps strength is good. Pulses are normal. Sensation is normal. Leg lengths are equal. The calf is 14.5 on the right and 14.0 on the left.

Morris visited Dr. Barth on September 8, 2003, needing "something for back." (R. 221) Dr. Barth observed a normal gait and stance and that Morris could change positions quickly and easily. Morris reported that he slept well and that his appetite was good. (*Id.*) Consequently, Dr. Barth recommended non-pharmaceutical pain treatment, such as warm and cold compresses, Ibuprofen with food, and regular movement. (R. 221)

In October of 2003, Morris reported back pain with tingling down his left thigh. He indicated that his appetite was good, that he slept well, and that Ibuprofen provided some relief. (R. 220) Morris further reported that Dr. Ericson told him that he was not a surgery candidate. (*Id.*) Again, Dr. Barth observed a normal gait and stance, and recommended non-pharmaceutical pain medication along with exercise. (*Id.*) However, Vioxx was prescribed. (R. 200)

3

On October 21, 2003, Morris reported that he could not do everything as quickly as he would like but that he was eating and sleeping well and able to engage in activities of daily living. (R. 219) Again, Morris had a normal gait and stance and demonstrated the ability to change positions quickly and easily. (*Id.*) Dr. Barth recommended increased walking and exercise as tolerated. (*Id.*)

In November of 2003, a state agency psychological consultant determined that Morris had no medically determinable psychological impairment and no functional limitations. (R. 169-81) Similarly, a state agency consultant determined that Morris had the ability to lift 20 pounds occasionally, frequently lift and/or carry 10 pounds, stand or walk for a total of about six hours in an 8-hour workday, sit for about six hours, and push or pull without any limit, other than as mentioned above for lift and carry. (R. 184)

In 2005, Morris was treated for hypertension, described as "moderately controlled." (R. 244) Progress Notes from August 12, 2005, indicate that Morris had no joint swelling, crepitation, or limitation of motion, notwithstanding "abnormal neck, shoulder and wrist pain." (R. 252) On September 12, 2005, Morris reported that he was taking acetaminophen for his ankle, which was working well, and that he was taking six acetaminophen per day. (R. 246)

An administrative hearing was held on January 31, 2006. Morris appeared by Attorney Thomas W. Durkin, and Vocational Expert Ronald Raketti testified. (R. 270) Morris testified that he takes medication for his back, and keeps his legs elevated "4, 5 hours" five to seven days a week. (R. 272) He stated that his back and leg pain are about a four or five on a scale of ten on an average day, and an eight or nine on a bad day. (R. 273) According to Morris, walking and lifting makes the pain worse, and he experiences a throbbing, shooting

4

pain down his leg on the left side. (R. 274) Morris further testified that he can walk about a block and stand about an hour, and sit about an hour. (*Id.*) Additionally, he experiences pain in his back, shoulders, ankle and leg. (R. 275) With respect to his high blood pressure, Morris stated that he experiences dizziness, lightheadedness, and headaches. (R. 276, 277) Morris recalled three migraines the month prior to his administrative hearing. (R. 277) Finally, he testified that he had problems grabbing anything over ten to fifteen pounds because of a swollen right hand. (R. 278)

During the administrative hearing, the ALJ commented that Morris earned approximately $15,000 in 2004, which was significantly after his onset. (R. 281) Morris' attorney acknowledged the income as well. (*Id.*)

The Vocational Expert testified that an individual with a GED and Morris' vocation history could perform light exertional work with occasional climbing, stooping, kneeling, crawling, balancing and crouching and do the work Morris was performing currently. (R. 284) Such an individual could perform a significant number of light unskilled jobs, including 3,800 housekeeping jobs, 2,400 counter rental clerk jobs, and 12,000 assembler positions. (R. 284-285) In addition, there are sedentary jobs, including 450 parking attendant jobs, and 15,000 cashiering positions. (R. 285) The sit/stand option would not affect the ability to perform parking lot attendant or store rental clerk positions. (*Id.*) Finally, Morris' ability to use his hands on a frequent but not constant basis would not affect his ability to perform these jobs. (R. 286)

The ALJ issued her decision on April 26, 2006, finding that Morris was not disabled and therefore entitled to or eligible for any period of disability, disability insurance benefits or supplemental security income. (R. 18) At the first step of her analysis, the ALJ

5

mentioned the claimed onset date was January 19, 1999, but that Morris earned $14,344 in 2004 and continues to work 20 hours a week. (R. 14, 16) She noted that Morris maintained that he was unable to work because of pelvic contusion, degenerative disc disease, radiculopathy, low back strain, spinal stenosis, adhesive capsulitis, fibromyalgia, hypertension and degenerative joint disease of the lumbar spine. (R. 14) While the ALJ found that these impairments existed, she concluded that they did not meet or equal the requirements for any impairment or combination of impairments in the Listing of Impairments. (R. 15) The ALJ also noted references in the record to right eyelid fibroma and depression, but that they are not severe impairments. (R. 15) Ultimately, she found that Morris had the residual functional capacity to perform light work that does not involve more than occasional stooping and crouching based on "objective medical evidence as a whole and the claimant's level of daily activity. . . ." (R. 16) She further found that a significant number of these jobs exist in Southeast Wisconsin. (*Id.*)

With his appeal, Morris submitted a medical record that was not before the ALJ or Appeals Council. (Doc. 10) Dr. Mejalli began treating Morris on July 31, 2006, three months after the ALJ issued her decision. (*Id.*) He diagnosed Morris with hypertension, chronic back pain (moderate DJD), and depression. (*Id.*) Dr. Mejalli noted that Morris rarely has symptoms which interfere with attention or concentration, but could not perform routine, repetitive tasks at a consistent pace. (*Id.*) On the form, Dr. Mejalli checked that Morris could walk not more than two blocks and sit continuously for 20 minutes. (*Id.*) He also indicated that Morris could sit and stand/walk for about two hours and would need approximately ten breaks. (*Id.*) Morris' legs would not need to be elevated for prolonged sitting, and would not need a cane. (*Id.*) According to Dr. Mejalli, Morris could occasionally lift and carry ten pounds

6

but rarely twenty pounds, never twist or stoop, and use his hands, fingers and arms for 40% of the day. (*Id.*) Finally, he opined that Morris would miss four days a month. (Id.)

ANALYSIS

In reviewing a disability case, the district court is limited to determining whether the final decision of the Commissioner is supported by substantial evidence and based on the proper legal criteria. *Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995)(quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The court must not attempt to reweigh the evidence, resolve material conflicts, or reconsider facts or the credibility of witnesses. *Cannon v. Apfel*, 213 F.3d 970, 974 (7th Cir. 2000).

Morris argues that Dr. Trotter agreed that he "had a lot of problems" with his back, leg and ankles, but that the ALJ did not accept the report. The ALJ accurately referred to Dr. Trotter's report in her decision and never stated that she did not accept it. Dr. Trotter's report opined that Morris appeared to be developing adhesive capsulitis from nonuse, but that his elbows, wrists and hands were normal. (R. 140) Continuing, Dr. Trotter observed fibromyalgia with 18/18 tender points identified, and that Morris appeared to be depressed. (*Id.*) Lastly, Dr. Trotter commented that the exam was "essentially unremarkable" and that Morris admitted to "pretty much" sitting around and doing nothing. (R. 139, 140) These determinations by Dr. Trotter do not contradict any of the ALJ's findings.

Dr. Ericson, who had treated Morris starting in 1995, found that "repetitive heavy lifting and bending at the age of 42 with spinal stenosis is probably not a thing that is going to be very successful for him." (R. 197) When evaluating Morris for a disability, Dr. Ericson

7

observed that Morris had a slight list while standing, no muscual parasinal spasm, tenderness in the lower back, positive straight leg raising, normal reflexes, good quadiceps strength, and normal sensation. *Id.* At one point, Dr. Ericson advised Morris to go ahead with a DVR application because "the likelihood of being accepted there is greater than that of being accepted in the area of Social Security." (R. 196) In her decision, the ALJ referenced Dr. Ericson's observations.

The records reflect that Morris was advised to use over-the-counter pain medications, warm and cold compresses, and to increase his activity level. (R. 220, 221, 246) Also, Morris admitted to his treating physicians that Ibuprofen provided some relief. (*Id.*) Further, the ALJ referenced the doctor's advice to Morris that he continue his pain medication and exercise. (R. 15)

While Morris argues that tests show that there are problems with his back, the existence of problems does not qualify one for benefits automatically. The standard is stringent, and the Social Security Act does not contemplate degrees of disability or allow for an award based on a partial disability. *Stephens v. Heckler*, 766 F.2d 284, 285 (7th Cir. 1985).

The ALJ discussed the objective medical evidence, including the x-ray results and clinical findings. While the ALJ may not disregard a claimant's subjective complaints merely because they are not fully supported by the objective medical evidence, a lack of objective evidence is a "useful indicator" of the intensity of a claimant's symptoms and the extent to which his ability to work is impaired. *See* 20 C.F.R. § 404.1529(c)(2); SSR 96-7p. Ultimately, the ALJ determined that Morris could perform light exertional work that does not involve more than occasional stooping and crouching. The hypothetical posed to the

8

vocational expert properly incorporated all of the claimant's limitations supported by medical evidence in the record. *Young v. Barnhart*, 362 F.3d 995, 1003 (7th Cir. 2004). And, as mentioned by the ALJ, one cannot overlook evidence that Morris continued to work long after his alleged onset date. Morris was employed at a "significant level in 2004, earning over $14,000 that year." He continues "to work about 20 hours each week and engages in daily activities as he chooses." (R. 16)

Although Morris states that he has been seeing Dr. Mejalli, treatment began after the date of the final administrative decision. "Remand for consideration of additional evidence is appropriate only upon a showing that the evidence is new and material to the claimant's condition during the relevant time period encompassed by the disability application under review, and there is good cause for not introducing the evidence during the administrative proceedings." *Anderson v. Bowen*, 868 F.2d 921, 927 (7th Cir.1989) (refusing remand for consideration of psychological evaluation conducted years after the ALJ hearing); 42 U.S.C. § 405(g) (sentence six). Morris attached Dr. Mejalli's report to his Statement, but never acknowledged that the evidence was not in the record before the ALJ or otherwise requested a remand pursuant to sentence six of § 405(g).

Moreover, Morris has not satisfied the requirements for remand. Because Dr. Mejalli did not begin to treat Morris until after the final administrative decision and did not relate his findings back to the application period, it is not time relevant. Further, the report is not based on any clinical findings or tests, and Dr. Mejalli treated Morris for a period of five weeks. Consequently, a remand is not appropriate based on this report.

Recently, Morris wrote a letter to this court indicating that he was granted "Level 5 Medical" after an honorable discharge from the army reserve but that he no longer receives

medical benefits. Nevertheless, the documents attached to the letter are not relevant to a determination by the Social Security Administration regarding Morris' disability after the claimed onset date and before the final administrative decision. Therefore, because the ALJ's decision is supported by substantial evidence and based on the proper legal criteria,

IT IS ORDERED that plaintiff William Morris' appeal of the Commissioner's denial of his application for disability insurance benefits and supplemental security income under the Social Security Act is denied.

IT IS FURTHER ORDERED that this case is dismissed.

Dated at Milwaukee, Wisconsin, this 13th day of September, 2007.

BY THE COURT

s/ C. N. CLEVERT, JR.

C. N. CLEVERT, JR.
U. S. DISTRICT JUDGE